Roderick L. HICKMAN *v.* STATE of Arkansas

CR 07-938                                    277 S.W.3d 217

Supreme Court of Arkansas
Opinion delivered February 21, 2008

*Joseph P. Mazzanti, III,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Nicana C. Sherman,* Ass't Att'y Gen., for appellee.

PAUL DANIELSON, Justice. Appellant Roderick L. Hickman appeals from his conviction for residential burglary, as a habitual offender, and his sentence to sixty months' imprisonment. He asserts three points on appeal: (1) that there was insufficient evidence to support his conviction; (2) that the circuit court erred in denying him a continuance where one of the prosecution's witnesses was not disclosed to his counsel until the morning of trial; and (3) that the circuit court erred in denying his request for an instruction on disputed-accomplice liability. The Court of Appeals reversed his conviction and remanded for a new trial, finding that Hickman's instruction argument was meritorious. *See Hickman v. State,* 99 Ark. App. 363, 260 S.W.3d 747 (2007). The State petitioned this court for review, which we granted. When we grant a petition for review, we treat the appeal as if it were originally filed in this court. *See Eastin v. State,* 370 Ark. 10, 257 S.W.3d 58 (2007). We find no error and affirm.

A review of the record reveals that around the end of November 2004, after Thanksgiving, Hickman, his cousin Caleb Johnson, and two others, James Earl Benton and Cord, went to the home of Ruby Douglas toward evening, looking for a tire for the van in which they were riding.[1] Hickman wanted to go door-to-door looking for a tire, but Ms. Douglas told him not to disturb the people in the neighborhood and not to go to the home of her next-door neighbor, Ms. Haddad, because nobody was home. At some point during the hour and a half to two hours that the group was at Ms. Douglas's, James Earl was seen passing a television to

---

[1] While the court of appeals' opinion referred to Ms. Douglas as Hickman's grandmother, we are unable to find any reference to that relationship in the record. Instead, Ms. Douglas testified that she did not know Hickman prior to the day he came to her home and that that day was the first time she had met him.

Hickman over a four-foot fence separating Ms. Douglas's and Ms. Haddad's properties. Hickman was then seen putting the television into the back of the van. The four then left Ms. Douglas's, with Hickman driving, and went to the home of LaShona Williams, to whom James Earl sold the television. In addition to the television, both checks and coins were seen in the van, after it departed from Ms. Douglas's home.

During the same time frame, Icer Crouse, Christine Haddad's grandson, discovered that someone had broken into the home of his grandmother. He noticed that a television was missing, as well as about $300 in cash, some collectible coins, and some of Ms. Haddad's checks. On December 1, 2004, Officer Anderson of the Dermott Police Department was dispatched to investigate a burglary at Ms. Haddad's home, at which time an incident report was completed. The next day, the Eudora Police Department contacted Officer Anderson and reported that one of Ms. Haddad's checks had been cashed, which ultimately led to the arrest of Caleb for forgery. Following his arrest, Caleb gave Officer Anderson information about the burglary. Hickman was later charged with and convicted of residential burglary, as already stated. He now appeals.

## I. Sufficiency of the Evidence

While Hickman does not dispute that a burglary occurred, he argues that there was no evidence that he entered the premises in which the burglary occurred, nor that he planned or organized the burglary. More specifically, he contends, there was no evidence that he was an accomplice in the burglary, as he simply took the television handed to him by James Earl Benton and placed it into the van. The State responds that the testimony presented at trial "shows that the jury did not need to resort to speculation or conjecture to determine that appellant had committed residential burglary by entering the Haddad house and stealing her property, a theft crime punishable by imprisonment."

In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *See Boyd v. State*, 369 Ark. 259, 253 S.W.3d 456 (2007). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *See id.* We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *See id.*

While the evidence does not show that Hickman himself entered the property and committed the act of burglary, there was substantial evidence that he was an accomplice to the burglary of Ms. Haddad's home. Arkansas Code Annotated § 5-39-201(a) (Repl. 2006) sets forth the offense of residential burglary:

> (a)(1) A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment.

> (2) Residential burglary is a Class B felony.

Ark. Code Ann. § 5-39-201(a) (Repl. 2006). In this case, the State proceeded under the theory that Hickman or an accomplice committed the residential burglary, and the jury was so instructed.

Our criminal code provides that a person may commit an offense either by his or her own conduct or that of another person. *See* Ark. Code Ann. § 5-2-401 (Repl. 2006). A person is criminally liable for the conduct of another person if the person is an accomplice of another person in the commission of an offense. *See* Ark. Code Ann. § 5-2-402(2) (Repl. 2006). A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, the person:

> (1) Solicits, advises, encourages, or coerces the other person to commit the offense;

> (2) Aids, agrees to aid, or attempts to aid the other person in planning or committing the offense; or

> (3) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to prevent the commission of the offense.

Ark. Code Ann. § 5-2-403(a) (Repl. 2006). When a theory of accomplice liability is implicated, we affirm a sufficiency-of-the-evidence challenge if substantial evidence exists that the defendant acted as an accomplice in the commission of the alleged offense. *See Wilson v. State*, 365 Ark. 664, 232 S.W.3d 455 (2006).

A review of the evidence in the instant case reveals substantial evidence to support Hickman's conviction. According to Caleb Johnson's testimony, he, Hickman, James Earl, and Cord

went over to Ms. Douglas's home. While there, he went outside and saw James Earl passing a television set to Hickman across the fence between Ms. Douglas's and Ms. Haddad's homes. He then saw Hickman put the television into the back of the van in which they had arrived. During his testimony, Caleb stated that he believed it was Hickman's idea to go into the house and acknowledged his statement to the police that the burglary was Hickman's idea. In addition to Caleb's testimony, Sammy Douglas, Ruby Douglas's son, testified that he also saw James Earl pass Hickman a television over the fence. He further stated that he saw Hickman put the television in the van. Because substantial evidence exists that Hickman provided aid to another in committing the offense of residential burglary, rendering him an accomplice, we affirm his conviction and sentence for residential burglary.

## II. Denial of Motion for Continuance

Hickman, for his second point on appeal, argues that the circuit court erred in denying him a continuance where the prosecution did not disclose its intent to call Sammy Douglas as a witness until the morning of trial. He contends that Sammy's testimony was important for the prosecution because of Hickman's contention that Caleb was an accomplice, which would have required his testimony to be corroborated. He claims that while he was given the opportunity to interview Sammy prior to trial, he was essentially denied the opportunity to investigate the witness for an effective cross-examination. He alleges that he was prejudiced by the circuit court's denial since the witness had not previously revealed his knowledge of the case to anyone prior to trial.

The State responds that Hickman has failed to demonstrate how a continuance or further research would have altered the outcome of the trial. Moreover, the State urges, in claiming that the facts disclosed by Sammy were new, defense counsel has shown that Hickman failed to provide him with relevant information concerning the events of the day, resulting in a lack of diligence, which the State contends is a sufficient basis for denying a continuance.

The standard of review for alleged error resulting from the denial of a continuance is abuse of discretion. *See Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007). Absent a showing of prejudice by the defendant, we will not reverse the decision of a

circuit court. *See id.* Furthermore, in discussing our standard of review for evidentiary rulings generally, we have said that circuit courts have broad discretion and that a circuit court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *See id.*

■ Here, Hickman was given time to interview the eleven-year-old witness prior to trial, and he exercised his right to cross-examine him. While Hickman argues that he would have been able to further research the witness had a continuance been granted, he fails to point to any specific information such research would have garnered that would have impacted or changed his cross-examination of the witness. Absent any showing of prejudice, we cannot say that the circuit court abused its discretion in denying Hickman a continuance.

### III. Denial of Disputed-Accomplice Liability Instruction

For his final point on appeal, Hickman argues that the circuit court erred in denying him the instruction on disputed-accomplice liability, AMI Crim. 2d 403.[2] He maintains that the evidence demonstrated that Caleb was an accomplice and that his testimony required corroboration. He contends that the jury should have been permitted to determine Caleb's status as an accomplice, citing to *Robinson v. State*, 11 Ark. App. 18, 665 S.W.2d 890 (1984). The State responds that Caleb was not charged with the burglary of Ms. Haddad's home, nor was there any testimony presented that connected him with the burglary. It contends that although Caleb was traveling with Hickman and the others, there was no testimony even suggesting that he aided or advanced the crime in any way.

This court has repeatedly stated that if there is some evidentiary basis for a jury instruction, giving the same is appropriate. *See Henderson v. State*, 349 Ark. 701, 80 S.W.3d 374 (2002). A party is entitled to an instruction if there is sufficient evidence to raise a question of fact or if there is any supporting evidence for the instruction. *See id.* There is no error in refusing to give a jury instruction where there is no basis in the evidence to support the

---

[2] At trial, Hickman proffered AMI Crim. 2d 402, arguing that Caleb was an accomplice as a matter of law, whose testimony required corroboration. The circuit court denied his request for that instruction as well; however, he does not challenge the circuit court's ruling as to 402 on appeal.

giving of the instruction. *See id.* In determining whether the circuit court erred in refusing an instruction in a criminal trial, the test is whether the omission infects the entire trial such that the resulting conviction violates due process. *See id.*

Here, Hickman bore the burden of proving that Caleb was an accomplice whose testimony required corroboration. *See, e.g., King v. State,* 323 Ark. 671, 916 S.W.2d 732 (1996). Our law is well settled that a witness's status as an accomplice is a mixed question of law and fact and that when the status of a witness presents issues of fact, the defense is entitled to have the question submitted to the jury. *See id.* The question must be submitted to the jury where there is any evidence to support a jury's finding that the witness was an accomplice. *See id.* In this case, Hickman sought to have the jury instructed in accord with AMI Crim. 2d. 403, which provides:

> A person cannot be convicted of a felony upon the uncorroborated testimony of an accomplice.

> [An accomplice is one (who directly participates in the commission of an offense or) who, with the purpose of promoting or facilitating the commission of an offense:

> (Solicits, advises, encourages or coerces another person to commit it;) (or)

> (Aids, agrees to aid, or attempts to aid another person in planning or committing it;) (or)

> (Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.)]

> It is contended that the witness[es] _____ *(name(s))* [was] [were] [an] accomplice(s). If you find that [he was] [they were], then _____ *(defendant(s))* cannot be convicted of _____ *(felony(s) being submitted)* upon testimony of [that] [those] witness[es], unless that testimony is corroborated by other evidence tending to connect _____ *(defendant(s))* with the commission of the offense(s). Evidence is not sufficient to corroborate the testimony of an accomplice if it merely shows that the offense(s) [was] [were] committed and the circumstances of the commission. [The testimony of one accomplice is not alone sufficient to corroborate the

testimony of another accomplice.] The sufficiency of the corroborating evidence is for you to determine.

> [You may, however, convict (the) (a) defendant of _____ *(misdemeanor)* upon the uncorroborated testimony of an accomplice, because that offense is only a misdemeanor.]

AMI Crim. 2d 403. We, then, must determine whether there was any evidence to support the giving of the instruction.

■ After reviewing the record, we hold that even if there was any evidence to support the giving of the instruction, Hickman has not demonstrated that he was prejudiced by the circuit court's failure to give the instruction. We have held that we will not presume prejudice when error is alleged and that an appellant must show prejudice because we do not reverse for harmless error. *See Gatlin v. State*, 320 Ark. 120, 895 S.W.2d 526 (1995). Here, the testimony of Sammy Douglas sufficiently corroborated Caleb's testimony that he witnessed James Earl passing a television to Hickman over the fence. Accordingly, even if the circuit court's failure to instruct the jury on disputed-accomplice liability was error, it was harmless. For all of the foregoing reasons, we affirm Hickman's conviction and sentence and reverse the court of appeals.

Affirmed; court of appeals reversed.