

Cite as 2013 Ark. 389

# SUPREME COURT OF ARKANSAS

No. CR–13–122

| | |
|---|---|
| TIMOTHY ALLEN WELLS<br>APPELLANT | Opinion Delivered October 10, 2013 |
| V. | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT, [NO. CR–2010–468–1] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE JOHN HOMER WRIGHT, JUDGE |
| | <u>AFFIRMED</u>. |

**JIM HANNAH, Chief Justice**

Appellant, Timothy Allen Wells, was convicted of capital murder in furtherance of aggravated robbery and was sentenced to a term of life imprisonment. The conviction arose as a result of the shooting death of Madhuben Patel, the owner of a motel in Hot Springs. On appeal, Wells contends that (1) there was insufficient evidence that Patel's murder was committed during the course and furtherance of an aggravated robbery, and (2) the circuit court erred when it refused to allow the jury to determine the accomplice status of Jason Smith. Because this is a criminal appeal in which a sentence of life imprisonment has been imposed, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2013). We affirm the circuit court.

On February 13, 2010, Wells and Smith stopped by Gene's Liquor Store in Malvern, where they attempted to cash a forged check in the amount of $2700, using Smith's name and identification. Dwayne Wright, the night manager at the liquor store, testified that he

had known Wells for many years and recognized him when he came into the store. Wright

stated that he refused to cash the check because "[t]he check had been . . . scribbled over

whoever's name it was, and it was just that amount of check on a weekend from another

town." According to Wright, when Wells left the liquor store, he was driving a Pontiac G-6.

After Wells failed to obtain money at the liquor store, he told Smith that he could get money

in Hot Springs. With Smith as his passenger, Wells drove to Hot Springs and stopped in an

alley by the Lynwood Motel. Armed with a gun, Wells then entered the motel and shot Patel

inside the motel's office. Terrell Alan Kuykendall and Steven Hasley were at the Shell

Superstop across from the motel at the time of the murder. After hearing a loud noise and

a woman's scream, Kuykendall and Hasley saw a man leaving the motel. They followed the

man—who was driving a Pontiac G-6—in an attempt to obtain his license-plate number, but

they were unsuccessful.

Wells confessed to investigators that he had murdered Patel at the Lynwood Motel.

In his confession, which was read to the jury and admitted into evidence, Wells stated,

> Man, I lost my mind the other day in Hot Springs. I blanked out. I'm bipolar and
> sometimes I flip out and go in a rage. I remember going in that building and a man
> and lady started screaming at me. My bipolar acted up and I just shot. Anybody could
> have been hurt that day in Hot Springs, I was ready to go in a rampage. Jason said that
> he couldn't believe the way I was acting. I remember going to the liquor store to cash
> the check. I was OK there. I remember going to Hot Springs and parking the car. I
> remember getting out and running into the little building. Jason was yelling at me and
> I told him to shut the fuck up and I just kept going. In the store, these Arabian or
> Indian people were yelling at me and I just shot. They were inside the building. That
> day anyone could have got hurt. I was ready to kill somebody or kill myself. I didn't
> know the lady in Hot Springs had died. I threw the gun out the passenger's side
> window between Malvern and Hot Springs. It was between the Reynolds plant and
> before the Rainbow Mart. I'm glad they stopped me; I need some help.

SLIP OPINION

Wells's friend, David Hughes, testified that, on the night of the murder, Wells admitted to him that he had shot somebody. Wells drove to Hughes's residence shortly after the murder. According to Hughes, Wells was driving a Pontiac G-6 that night.

Although Wells confessed to killing Patel, he contends that there was insufficient evidence that he had committed the underlying felony offense of aggravated robbery. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence. *See, e.g.*, *Huff v. State*, 2012 Ark. 388, ___ S.W.3d ___. Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *E.g.*, *Stevenson v. State*, 2013 Ark. 100, ___ S.W.3d ___. On review, only evidence that supports the verdict is considered, and the evidence is viewed in the light most favorable to the verdict. *Id.*

Circumstantial evidence may constitute substantial evidence to support a conviction. *E.g.*, *Dixon v. State*, 2011 Ark. 450, 385 S.W.3d 164. To be substantial, the evidence must exclude every other reasonable hypothesis than that of guilt of the accused. *Id.* The question of whether circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to decide. *Id.*

Under the felony-murder statute, a defendant need only have the requisite intent to commit the underlying felony, here aggravated robbery, and not the intent to commit murder. *See, e.g.*, *Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999). Therefore, the elements required to sustain the conviction in this case are that Wells committed aggravated robbery, and, in the course of or in immediate flight therefrom, he caused the death of

3

SLIP OPINION

another person under circumstances manifesting extreme indifference to the value of human life. *See* Ark. Code Ann. § 5-10-101 (Supp. 2009). A person commits aggravated robbery if he or she commits robbery as defined in Arkansas Code Annotated section 5-12-102,[1] and the person (1) is armed with a deadly weapon, (2) represents by word or conduct that he or she is armed with a deadly weapon, or (3) inflicts or attempts to inflict death or serious physical injury upon another person. Ark. Code Ann. § 5-12-103 (Repl. 2006).

Wells maintains that there is insufficient evidence that Patel's murder was committed during the course and furtherance of an aggravated robbery because proof that Wells was attempting to rob the motel was based on the inconsistent testimony of Smith. Smith testified at trial that, when Wells told him that he could get money in Hot Springs, he first thought Wells might have some family members at the motel who would give him money, but he later concluded that Wells intended to rob the motel. Smith testified that he remembered telling police that he thought Wells was going to rob the motel and that he tried to talk him out of it. Then, Smith testified that Wells "didn't tell me he was gonna rob it," and later, during cross-examination, Smith testified that he was not sure if Wells had stated that "he was going to rob the place." During redirect examination, Smith stated that, when he thought Wells was going to rob the motel, he tried to talk Wells out of it, but Wells told him to "shut the fuck up."

---

[1] A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person. Ark. Code Ann. § 5-12-102(a) (Repl. 2006).

The State contends that it is of no moment whether Wells actually uttered the word "rob" when he told Smith he could get some money in Hot Springs. Further, the State points out that there was no evidence demonstrating that Wells knew Patel or that she was willing to give Wells any money. Finally, the State asserts that the evidence shows that Wells took a gun with him into Patel's place of business. The State contends that, in view of the evidence adduced at trial, it is beyond speculation and conjecture that Wells entered the Lynwood Motel with the intention of using deadly force to accomplish his stated purpose of obtaining money and that he shot and killed Patel in the course and furtherance of an aggravated robbery.

We agree, and we hold that there was substantial evidence to support the jury's verdict. Moreover, whatever contradictions, conflicts, and inconsistencies there were in Smith's testimony were for the jury to resolve, and it could credit those parts of his testimony they believed to be true and disregard those they believed to be false. *E.g.*, *Abdullah v. State*, 301 Ark. 235, 783 S.W.2d 58 (1990); *Henderson v. State*, 255 Ark. 870, 503 S.W.2d 889 (1974).

Wells next contends that the circuit court erred when it refused to instruct the jury that it could find that Smith was an accomplice so that Smith's testimony would require corroboration. The circuit court declined to instruct the jury with the disputed-accomplice liability instruction, AMI Crim. 2d 403, concluding that there was insufficient evidence to support the instruction. On appeal, Wells maintains that there were facts from which a jury could have found that Smith was an accomplice. Specifically, Wells points to the following

5

evidence: (1) Smith agreed to help Wells cash a stolen check and thus demonstrated his willingness to commit a crime, (2) Smith remained in the car after he became aware that Wells was going to rob the motel, (3) Smith aided Wells during his flight from the crime scene, and (4) Smith did not go to the police. The State contends that the circuit court did not abuse its discretion in refusing to give the requested instruction because there is no evidence that Smith took part in planning the robbery, or that he otherwise encouraged or aided in its commission.

The appellant bears the burden of proving that a witness is an accomplice whose testimony must be corroborated. *E.g.*, *Taylor v. State*, 2010 Ark. 372, 372 S.W.3d 769. A defendant must either have the circuit court declare a witness to be an accomplice as a matter of law or have it submit the issue to the jury for determination. *Id*. A witness's status as an accomplice is a mixed question of law and fact. *Id*. When the facts show conclusively that the witness is an accomplice, the issue may be decided as a matter of law. *Id*. When the accomplice status instead presents issues of fact, the question is submitted to the jury. *Id*.

A party is entitled to an instruction if there is sufficient evidence to raise a question of fact or if there is any supporting evidence for the instruction. *E.g.*, *Hickman v. State*, 372 Ark. 438, 277 S.W.3d 217 (2008). There is no error in refusing to give an instruction when there is no basis in evidence to support the giving of the instruction. *Id*. A circuit court's ruling on whether to submit a jury instruction will not be reversed absent an abuse of discretion. *E.g.*, *Taylor*, *supra*.

In this case, Wells sought to have the jury instructed according to AMI Crim. 2d 403:

A person cannot be convicted of a felony upon the uncorroborated testimony of an accomplice.

[An accomplice is one (who directly participates in the commission of an offense or) who, with the purpose of promoting or facilitating the commission of an offense:

(Solicits, advises, encourages or coerces another person to commit it;) (or)

(Aids, agrees to aid, or attempts to aid another person in planning or committing it;) (or)

(Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.) ]

It is contended that the witness[es] _____ (name(s)) [was] [were] [an] accomplice(s). If you find that [he was] [they were], then _____ (defendant(s)) cannot be convicted of _____ (felony(s) being submitted) upon testimony of [that] [those] witness[es], unless that testimony is corroborated by other evidence tending to connect _____ (defendant(s)) with the commission of the offense(s). Evidence is not sufficient to corroborate the testimony of an accomplice if it merely shows that the offense(s) [was] [were] committed and the circumstances of the commission. [The testimony of one accomplice is not alone sufficient to corroborate the testimony of another accomplice.] The sufficiency of the corroborating evidence is for you to determine.

[You may, however, convict (the)(a) defendant of _____ (misdemeanor) upon the uncorroborated testimony of an accomplice, because that offense is only a misdemeanor.]

AMI Crim. 2d 403.

Having reviewed the record, we hold that even if there were any evidence to support the giving of the instruction, Wells has not demonstrated that he was prejudiced by the circuit court's failure to give the instruction because Smith's testimony was sufficiently corroborated by other evidence. *See Hickman, supra.* Corroborating evidence need not establish each element of an offense or corroborate every detail of the accomplice testimony. *E.g., Taylor, supra.* It must be evidence of a substantive nature since it must be directed



toward proving the connection of the accused with a crime and not toward corroborating the accomplice testimony. *Id*. The corroborating evidence need not be sufficient standing alone to sustain the conviction, but it must, independent from that of the accomplice, tend to connect to a substantial degree the accused with the commission of the crime. *Id*. The test is whether, if the testimony of the accomplice were completely eliminated from the case, the other evidence would independently establish the crime and tend to connect the accused with its commission. *Id*.

Here, Wells confessed to investigators that he had killed Patel at the Lynwood Motel. Wells's friend, David Hughes, testified that, on the night of the murder, Wells admitted to him that he had shot somebody. The testimony of Dwayne Wright, the night manager at the liquor store, established that, on the night of the murder, Wells sought a large sum of money but was unable to obtain the money when Wright refused to cash a forged check. Wright testified that when Wells left the liquor store he was driving a Pontiac G-6, which was the same car chased by Kuykendall and Hasley immediately following Patel's murder and the same car that was driven to Hughes's residence after the crimes had been committed. Therefore, if Smith's testimony had been eliminated from the case, Wells's confession and the evidence surrounding the commission of the murder would have independently established that Wells killed Patel during the course of an aggravated robbery. Accordingly, even if the circuit court's failure to instruct the jury on disputed-accomplice liability was error, it was harmless, and this court does not reverse for harmless error. *See Hickman*, *supra* (noting that we will not presume prejudice when error is alleged and that an appellant must



show prejudice because we do not reverse for harmless error).

In compliance with Arkansas Supreme Court Rule 4–3(i) (2013), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Wells, and no prejudicial error has been found.

Affirmed.

BAKER and HART, JJ., dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.** Under our standard of review, we review all the evidence, even that improperly admitted and based on that standard, I agree that there is substantial evidence to support the jury's verdict. However, I believe that this case should be reversed because the circuit court abused its discretion in refusing to submit to the jury the accomplice-testimony instruction, AMI Crim. 2d 403. The majority's use of dicta from *Hickman v. State*, 372 Ark. 438, 277 S.W.3d 217 (2008), to forge a new procedural template for harmless-error analysis without first determining whether the trial court erred in finding that there was no evidence of accomplice liability is contrary to law and compromises an accused person's right to a fair trial. In *Hickman*, we upheld a trial court's finding that there was no evidence to support giving the accomplice-testimony instruction. Here, the trial court's erroneously concluded that there was no evidence to support giving the instruction. That error should not be upheld.

A party is entitled to a jury instruction if there is any supporting evidence for the instruction. *Morris v. State*, 351 Ark. 426, 94 S.W.3d 913 (2003) (citing *Henderson v. State*, 349 Ark. 701, 80 S.W.3d 374 (2002)). In pertinent part, to be defined as an accomplice to

the commission of a crime under our criminal code, that person must, with the purpose of promoting or facilitating that offense, aid, agrees to aid, or attempts to aid the other person in planning or committing it. Ark. Code Ann. § 5-2-403 (Repl. 2006). Relevant factors in determining the connection of an accomplice with the crime include the presence of the witness in the proximity of a crime, opportunity, and association with a person involved in a crime in a manner suggestive of joint participation. *Parker v. State*, 355 Ark. 639, 144 S.W.3d 270 (2004).

Here, there was evidence that Jason Smith helped Wells in his flight from the crime by pushing the getaway car after it got stuck. This evidence alone justifies giving the AMI Crim. 2d 403 instruction. *See Jackson v. State*, 193 Ark. 776, 102 S.W.2d 546 (1937) (evidence showing a witness was present, had knowledge of the crime that had been committed, and had protected the perpetrator was sufficient to require giving the jury the accomplice-testimony instruction). The trial court's failure to give that instruction was error. *King v. State*, 323 Ark. 671, 916 S.W.2d 732 (1996). Additionally, there was evidence that Wells had earlier accompanied Smith when he attempted to cash a forged check in another county. While Smith did not accompany Wells into the motel, an associate need not participate in every aspect of the crime to be found an accomplice. *See Meadows v. State*, 2012 Ark. 57, 386 S.W.3d 470. Given Smith's assistance in getting away from the scene of the murder, his proximity to the murder, and his evening-long association with Wells in a quest for money, a reasonable jury could find that there was joint participation. Accordingly, in my view, the trial court abused its discretion in refusing to give the AMI Crim. 2d 403

instruction.

Only after trial court error has been found is it permissible to proceed to harmless-error analysis. Yet, in relying on *Hickman*, *supra*, the majority is omitting this essential first step. This omission is significant, because the majority goes on to review evidence that the jury was never asked to evaluate in the context of whether it provides corroboration of accomplice testimony and concludes that it was sufficient. Such a conclusion would be warranted if the issue on appeal was whether there was sufficient corroboration of accomplice-witness testimony. In that situation the jury has already passed on the question and made its credibility calls. Accordingly, it is proper when we view the evidence in the light most favorable to the jury's decision. *Meeks v. State*, 317 Ark. 411, 878 S.W.2d 403 (1994). Here, the jury made no such decision. Therefore the majority's conclusion that Smith's testimony was sufficiently corroborated impermissibly invades the exclusive province of the jury. The majority is making credibility calls on a cold record to support finding its own facts.

In performing harmless-error analysis, we eliminate from the analysis all of Smith's testimony and determine whether there is evidence that tends to connect Wells with the commission of the offense. Ark. Code Ann. § 16-89-111(e)(1)(A) (Repl. 2005). However, after doing so, there is no evidence to establish the underlying felony—robbery of the motel. The majority's recitation of the facts shows how crucial Smith's testimony was to the State's case. Indeed, not even the crime-scene photos suggested that anything had been disturbed, much less stolen. Wells's confession only provides evidence that he committed the murder. Accordingly, the circuit court's error was not harmless, and this case must be remanded for a new trial.

Baker, J., joins.

*Charles D. Hancock*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Eileen W. Harrison*, Ass't Att'y Gen., for appellee.