SLIP OPINION

Cite as 2015 Ark. 28

# SUPREME COURT OF ARKANSAS

No. CR–13–1006

| | |
|---|---|
| ROLANDIS LARENZO CHATMON<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered JANUARY 29, 2015<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR–12–571]<br><br>HONORABLE MICHAEL A. MAGGIO, JUDGE<br><br>AFFIRMED. |

**PAUL E. DANIELSON, Associate Justice**

Appellant Rolandis Larenzo Chatmon appeals the order of the Faulkner County Circuit Court finding him guilty of three counts of aggravated robbery and one count of theft of property. He was sentenced, as a habitual offender with a firearm enhancement, to a total term of three life sentences, plus 360 months' imprisonment, to be served consecutively. On appeal, he argues that (1) there was insufficient evidence to support his convictions because the State failed to prove that he was the person who committed the crimes; (2) the circuit court erred in allowing the State to introduce into evidence certain recordings of phone conversations; and (3) the circuit court erred in denying his motion for new trial based on a claim of ineffective assistance of counsel. Our jurisdiction of this appeal is pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2014). We affirm.

The record reflects that on the evening of May 15, 2012, Derek Leidholm, his wife, Morgan, and their neighbor, Jansen McGuire, were in the garage of the Leidholms' house,

when a man entered the garage, carrying a black semiautomatic pistol, and demanding money. After Jansen handed over a leather wallet, the man exited the garage from the left side, just as he had entered. Both Morgan and Jansen called 911 in separate calls. While they were doing so, Derek peeked around the corner of the garage and saw the man running "down the side . . . through the yards." Derek then saw a dark-color, midsize SUV proceed slowly through a stop sign without stopping, while the man ran beside it. After losing sight of the SUV, Derek remained outside of his garage, and then saw the SUV again, this time moving at a high rate of speed.

After receiving a subject description and vehicle description, officers checked the area. Specifically, police were looking for a tall, thin black male wearing a white shirt, black jeans, and possibly a blue baseball cap and carrying a black semiautomatic pistol. In addition, police sought what was possibly a black SUV. In checking nearby apartment complexes, police discovered a dark-colored SUV parked in a slanted position with a driver and a passenger sitting inside. After approaching the vehicle, police discovered a tall, thin black male, wearing a white shirt and black jeans, who identified himself as Chatmon; Chatmon informed the police that he and his passenger, Rodney Chambers, were about to leave.

At that time, Crystal Brown, Chatmon's then girlfriend and the owner of the SUV, came outside and subsequently consented to a search of the car. Police searched the vehicle, and a hat and a black semiautomatic pistol were found. Police also searched a nearby trash dumpster and discovered Jansen's wallet sitting on top of the trash inside the dumpster.

SLIP OPINION

On May 18, 2012, a felony information was filed, charging Chatmon with three counts of aggravated robbery, one count of theft of property, and one count of possession of a firearm by certain persons.[1]  Chatmon was tried before a jury on August 8–9, 2013.  He was convicted and sentenced, as previously set forth, and now appeals.

For his first point on appeal, Chatmon argues that the circuit court erred in denying his motion for directed verdict.  He contends not that there was insufficient evidence of aggravated robbery and theft of property, but that there was insufficient evidence that he was the person who committed the crimes.  Chatmon avers that there is only circumstantial evidence to support his convictions and that it was insufficient to identify him as the assailant.  The State responds that substantial evidence exists to show that Chatmon committed the crimes, including his own admission to a fellow inmate at the county jail.

The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence.  *See Wells v. State*, 2013 Ark. 389, 430 S.W.3d 65.  Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture.  *See id.*  On review, only evidence that supports the verdict is considered, and the evidence is viewed in the light most favorable to the verdict.  *See id.*

---

[1]The possession count was severed on Chatmon's motion.

A person commits aggravated robbery if he or she commits robbery as defined in Arkansas Code Annotated section 5-12-102,[2] and the person (1) is armed with a deadly weapon, (2) represents by word or conduct that he or she is armed with a deadly weapon, or (3) inflicts or attempts to inflict death or serious physical injury upon another person. *See* Ark. Code Ann. § 5-12-103 (Repl. 2013). A person commits theft of property if, with the purpose of depriving the owner of the property, he knowingly (1) takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another, or (2) obtains the property of another by threat. *See* Ark. Code Ann. § 5-36-103(a) (Repl. 2013).

Reviewing the evidence in the light most favorable to the State, the proof adduced at trial revealed the following. The Leidholms and Jansen each testified that a black male, armed with a gun, entered the Leidholms' garage and demanded money. Derek testified that once Jansen handed over his wallet, the assailant left, and his wife went inside to call 911 and Jansen left to go to his home. After checking on his wife, Derek went back outside to make sure the gunman was not going to return. He stated that he looked out of his garage and saw the robber running through the neighbors' yards and then noticed an SUV "creep through a stop sign." Derek described the SUV as a dark-colored, midsize SUV, similar to a Toyota 4-

---

[2]Arkansas Code Annotated section 5-12-102 provides that a person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person. *See* Ark. Code Ann. § 5-12-102(a) (Repl. 2013).

Runner. According to Derek, he saw the SUV again when it drove past his house at approximately sixty miles per hour and failed to stop at a nearby stop sign. Derek described the gunman as African American, close to six feet tall, wearing high-top basketball shoes, dark blue jeans, a white shirt, and a fitted, straight-billed ball cap. He stated that the gun was black or synthetic in color and was a large-caliber handgun, about the size of a .9 millimeter or .45-caliber, semiautomatic handgun. When the State showed Derek the gun that was recovered when police arrested Chatmon, Derek stated that it appeared to be consistent with the gun used in the robbery. Derek also confirmed that a picture of the vehicle in which police found Chatmon shortly after the robbery matched the description of the vehicle he saw in his neighborhood after the robbery. Derek further identified the clothing that was taken from Chatmon after his arrest as the clothing worn by the person who committed the robberies.

Jansen testified that he called 911 after the robbery, and the State introduced the recording of that phone call into evidence. The recording was played for the jury and, on it, Jansen is heard telling the operator that a man showed up in the garage, with a gun, demanding their money and cell phones, and then ran off, possibly getting into a black Trailblazer. Jansen stated that the gunman was a black male and was wearing a white shirt, black pants, and a baseball cap. Jansen further stated that the assailant's baseball cap had some type of raised logo and a flat bill. He described the assailant as being about five feet, eleven inches tall and weighing approximately 140–150 pounds. According to Jansen, the assailant's gun was black, with a long barrel, and was not a revolver. When the State showed him pictures of the baseball hat and the gun recovered when police arrested Chatmon, Jansen

confirmed that they were consistent with the hat worn and the gun used by the assailant. Jansen stated that he gave the man his wallet, which was a brown Fossil wallet, and confirmed that police recovered his wallet and returned it to him the day after the robbery.

Morgan testified as well. She stated that after the robbery she went into her home to call 911. The State introduced into evidence the recording of her call to 911 and published it to the jury. During this call, Morgan described the assailant as a black male, wearing a T-shirt, jeans, and a bandana over his face and carrying a black handgun. Morgan also testified at trial that the assailant was wearing a flat-billed hat and some type of high-top tennis shoes.

Officer Matt Edgmon, with the Conway Police Department, testified that he was on patrol the evening of May 15, 2012, when he received notice of a reported armed robbery nearby. After receiving a description of the suspect and a vehicle possibly connected to the crime, Officer Edgmon began searching the area for that vehicle. The suspect was described to the officer as a tall, thin black male, wearing a white shirt and black jeans and possibly a blue ball cap. Dispatch also reported that the suspect was armed with a black semiautomatic pistol, and the suspect vehicle was described as "a possibly black in color SUV." Officer Edgmon began searching nearby apartment complexes, including the Stoneridge Apartments, when he noticed a dark-colored SUV that was parked in two slots and appeared to have been hastily parked. As he drove by, the officer noticed someone in the driver's seat, so he got out to speak with the person in the vehicle. As the officer approached the vehicle, the person on the driver's side of the vehicle began to exit. The officer noticed that he was a tall, thin black male, wearing a white shirt and black jeans and also noticed that there was a passenger in the

vehicle. The driver, who stated he was a resident at the apartments, identified himself as Rolandis Chatmon and the passenger identified himself as Rodney Chambers. According to Officer Edgmon, as he was talking to Chatmon, Chatmon grew increasingly nervous and repeatedly stated that he and Chambers were about to leave. Chatmon told Officer Edgmon that he and Chambers had been down at another apartment but had not been driving the car, which was inconsistent with the fact that the SUV's hood was warm to the touch, indicating it had recently been driven. Officer Edgmon subsequently learned that the SUV belonged to Crystal Brown, Chatmon's then girlfriend, who had come from one of the apartments while the officer was talking to the men. Brown gave the officer, along with Officer Travis Caldwell who also reported to the scene, permission to search the vehicle. While Officer Edgmon was talking to Brown, Chatmon was yelling at her not to allow the officers to search the vehicle. Inside the vehicle's console was a black semiautomatic pistol and in the back of the vehicle was a hat. And, in a nearby trash dumpster, police located a brown leather Fossil wallet sitting atop the trash inside the dumpster. Officers Edgmon and Caldwell testified that the SUV, a Ford Explorer, appeared to be black under the lights but was actually dark green in color.

Brown testified that Chatmon was living with her at the time of the robbery, and that on that particular evening he left their apartment in her Ford Explorer around 7:00 p.m. and returned shortly after 11:00 p.m. Brown thought she remembered Chatmon wearing a white T-shirt and hat that evening. According to Brown, she saw Chatmon return, get out of the passenger side of the vehicle, walk toward where the dumpster was located, and then return

to the car and get in the driver's side. Brown stated that she gave officers permission to search her vehicle, which upset Chatmon.

Detective David Short with the Conway Police Department testified that he investigated this case. He stated that he had spoken with both Brown and Chatmon and was able to recognize their voices and, in the course of the investigation had reviewed some recordings of phone calls made by Chatmon, while in jail, to Brown. These calls were then played for the jury. During one of the calls, Chatmon admitted that he had the gun in Brown's vehicle and had also kept it in her apartment at times. In another call, Chatmon was angry with Brown for allowing police to search her car. And, in yet another call, Chatmon admitted that on the night of the robbery he did not know why he did not get out of the car and go into the apartment as soon as he parked.

Finally, Monette Solomon testified that he met Chatmon while they were incarcerated together and that Chatmon told him he was in jail because he "had hit a lick." Solomon explained that was street slang for committing a robbery or burglary. Solomon also testified that Chatmon told him he used a .40-caliber handgun during that robbery and that Rodney Chambers had driven the vehicle that Chatmon got into after the robbery. According to Solomon, Chatmon believed he would not be convicted for the crimes because the victims had described the gun as a .45-caliber weapon, when it was actually a .40-caliber handgun.

In advancing his argument that there was insufficient evidence to support his convictions, Chatmon points to some inconsistencies in statements made by the three victims and also asserts that the information they provided to police to describe the assailant was

nothing more than generalities. According to Chatmon, the State failed to present any direct evidence of his guilt and, instead, relied solely on circumstantial evidence to convict him. And, according to him, this circumstantial evidence caused the jury to resort to speculation and conjecture in convicting him. This argument is simply unavailing.

Circumstantial evidence is evidence of circumstances from which a fact may be inferred. *Jackson v. State*, 363 Ark. 311, 214 S.W.3d 232 (2005). Direct evidence is evidence that proves a fact without resort to inference, when for example, it is proved by witnesses who testify to what they saw, heard, or experienced. *Id.* Here, Chatmon ignores crucial evidence introduced by the State through witness Monette Solomon that Chatmon confessed to committing the robbery and to using a .40-caliber pistol to do so. This was direct evidence linking him to the crimes. *See, e.g.*, *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996) (stating that witness testimony that a defendant admitted to committing the murders was direct evidence of guilt). And, even though Chatmon attempts to discount this testimony by pointing to the fact that Solomon was a felon with pending charges, it is within the discretion of the jury to believe or disbelieve any witness. *Ellis v. State*, 2012 Ark. 65, 386 S.W.3d 485. Clearly, the jury found Solomon's testimony to be credible.

Moreover, in addition to this direct evidence, the State introduced ample circumstantial evidence, as set forth above, that tied Chatmon to the crime. Simply because the majority of the evidence was circumstantial does not mean that there was insufficient evidence supporting the convictions. Evidence of guilt is not less because it is circumstantial. *Jackson*, 363 Ark. 311, 214 S.W.3d 232. Where the evidence is substantial, it is the jury's duty

to decide whether the circumstantial evidence offered to prove guilt excludes every other reasonable hypothesis consistent with innocence. *Sales v. State*, 374 Ark. 222, 289 S.W.3d 423 (2008). In light of the foregoing evidence, we reject Chatmon's claim that there was insufficient evidence supporting his convictions and affirm on this point.

Chatmon next argues that the circuit court erred in admitting certain audio recordings of Chatmon talking with Brown and because of such error he is entitled to a new trial. More specifically, Chatmon argues that the State's introduction of the recordings through Detective Short did not satisfy the authentication requirement of Arkansas Rule of Evidence 901. The State counters that the circuit court did not abuse its discretion in admitting the recordings. Alternatively, the State argues that even if there was any error in the admission of the recordings, there was no prejudice and, thus, any error was harmless.

The decision to admit or exclude evidence is within the sound discretion of the circuit court, and we will not reverse that decision absent a manifest abuse of discretion. *E.g.*, *Laswell v. State*, 2012 Ark. 201, 404 S.W.3d 818. The abuse-of-discretion standard is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *E.g.*, *Grant v. State*, 357 Ark. 91, 161 S.W.3d 785 (2004). In addition, we will not reverse a ruling on the admission of evidence absent a showing of prejudice. *E.g.*, *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002).

Rule 901 of the Arkansas Rules of Evidence sets out the foundation that must be laid prior to voice-identification testimony and provides as follows:

*Requirement of authentication or identification.*

(a) *General Provision.* The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) *Illustrations.* By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

. . . .

(5) *Voice identification.* Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

Ark. R. Evid. 901(a), (b)(5) (2014). Authentication requirements are satisfied if the trial court, in its discretion, concludes that the evidence presented is genuine and, in reasonable probability, has not been tampered with or altered in any significant manner. *Davis*, 350 Ark. 22, 86 S.W.3d 872; *Guydon v. State*, 344 Ark. 251, 39 S.W.3d 767 (2001).

This court has previously addressed a similar argument that an insufficient foundation had been laid prior to the introduction of a recording. In *Smithey v. State*, 269 Ark. 538, 602 S.W.2d 676 (1980), this court held that a proper foundation had been laid for the introduction of a recording of a conversation between a defendant and an informant where an officer testified that he had listened to the conversation electronically, reviewed the tapes and transcript, and stated that the recording accurately reflected the conversation. Indeed, Chatmon concedes that an officer's testimony that he recognized a defendant's voice on a recording was sufficient for purposes of authentication, citing to this court's decision in *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000). But, Chatmon asserts that Detective Short's testimony does not comply with the requirements of Rule 901 because "it falls short

of the knowledge necessary to authenticate the purported recording." This argument is simply without merit.

Here, Detective Short testified that he had spoken with both Chatmon and Brown, that he was familiar with their voices, and that he would recognize their voices on a phone call or other recording. He also stated that, based on his prior contact with both of them, he believed he would be able to identify their voices. Detective Short specifically stated that he had interviewed Chatmon for over an hour and had spoken to him another time subsequent to that interview and had spoken to Brown on several occasions. Detective Short then testified that the voices on the recorded phone calls were those of Chatmon and Brown. In light of the detective's testimony, and considering the high threshold of review related to the admission of evidence, we cannot say that the circuit court abused its discretion in admitting the recorded phone calls between Chatmon and Brown. We therefore affirm on this point.

As his final point on appeal, Chatmon argues that the circuit court erred in denying his pro se motion for a new trial because his attorney provided ineffective assistance of counsel during his trial. According to Chatmon, his counsel waived his right to speedy trial without his knowledge, understanding, or consent. Moreover, Chatmon asserts that his counsel failed to adequately cross-examine the witnesses so as to identify inconsistencies in their testimony.

The State argues to the contrary that all of Chatmon's claims for a new trial were deemed denied on September 13, 2013, and, thus, because his motion was deemed denied before entry of a written order, this court is precluded from reviewing either of Chatmon's assertions of ineffective assistance of counsel. Alternatively, the State asserts that this court is

SLIP OPINION

precluded from reviewing the ineffectiveness claim related to the waiver of his right to speedy trial because it was not raised until the hearing on his motion for a new trial and because the circuit court did not provide written findings of fact or a ruling on this issue. The State also argues that there is no merit to the argument as it relates to the cross-examination of witnesses because the allegations in Chatmon's motion for new trial were merely conclusory and cannot support a claim for ineffective assistance of counsel.

Arkansas Rule of Criminal Procedure 33.3 governs posttrial motions and, pursuant to subsection (b), requires that the filing of a motion, such as this one for a new trial, must be filed within thirty days after entry of judgment. Ark. R. Crim. P. 33.3(b) (2014). If the circuit court neither grants nor denies a posttrial motion within thirty days after the date the motion is filed, it shall be deemed denied as of the thirtieth day. Ark. R. Crim. P. 33.3(c). This court has made clear that a defendant may assert a claim based on ineffective assistance of counsel in a posttrial motion. And, in order for a defendant to argue ineffective assistance of counsel on direct appeal, he must first have presented the claim to the lower court either during the trial or in a motion for new trial. *E.g.*, *Rounsaville v. State*, 374 Ark. 356, 288 S.W.3d 213 (2008) (holding that a claim of ineffective assistance of counsel is appropriate on direct appeal only when it is raised before the trial court and the facts and circumstances surrounding the claim have been fully developed at the trial level). This court has also explained that a deemed-denied ruling on a posttrial motion for new trial is an insufficient order from which to raise on direct appeal a claim of ineffectiveness because such a ruling necessarily precludes any consideration by the trial court of the relevant facts pertaining to the

claim. *E.g., Maxwell v. State*, 359 Ark. 335, 197 S.W.3d 442 (2004); *Dodson v. State*, 326 Ark. 637, 934 S.W.2d 198 (1996); *see also Chavis v. State*, 328 Ark. 251, 942 S.W.2d 853 (1997).

Here, Chatmon's sentencing order was entered on August 14, 2013. Chatmon filed a pro se motion for new trial on August 13, 2013, arguing that his attorney failed to properly cross-examine witnesses. The circuit court held a hearing on the new-trial motion on September 10, 2013, and in that hearing, Chatmon mentioned that he believed counsel had improperly waived his right to a speedy trial. The circuit court entered a written order denying the new-trial motion on October 2, 2013, but pursuant to Rule 33.3(c), Chatmon's motion was actually deemed denied on September 12, 2013, the thirtieth day after the filing of his new-trial motion. Nevertheless, in its written order, the circuit court found that there was no merit to Chatmon's claim that his trial counsel failed to properly cross-examine witnesses but made no mention of Chatmon's oral argument that counsel improperly waived his right to speedy trial.

We agree with the State that this court is precluded from addressing either of Chatmon's ineffective-assistance claims because this court has clearly stated that a deemed-denied ruling is an insufficient order from which to raise ineffective assistance of counsel on direct appeal. *See Maxwell*, 359 Ark. 335, 197 S.W.3d 442. Here, although the circuit court entered a written order denying Chatmon's motion, it was not entered until after the motion had already been deemed denied pursuant to Rule 33.3. Accordingly, we affirm on this point.

SLIP OPINION

Pursuant to Arkansas Supreme Court Rule 4–3(i) (2014), the record has been reviewed for all objections, motions, and requests that were decided adversely to Chatmon, and no prejudicial error has been found.

Affirmed.

*Digby Law Firm*, by: *Bobby R. Digby II*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.