2009 Ark. 568

**Ramon WILLIAMSON, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–519.**

Supreme Court of Arkansas.

Nov. 12, 2009.

William R. Simpson, Jr., Public Defender, Bret Qualls, Deputy Public Defender, by: Clint Miller, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Valerie Glover Fortner, Ass't Att'y Gen., for appellee.

ELANA CUNNINGHAM WILLS, Justice.

Ramon Williamson appeals from his jury conviction for capital murder and sentence of life imprisonment without parole. Williamson brings a single point on appeal, arguing that the circuit court erred by denying his motion for a directed verdict. We affirm.

On Monday, August 8, 2005, Little Rock Police responded to a report of a decomposing body found inside a garbage dumpster located behind a Little Rock automobile service shop on 65th Street. According to the medical examiner's testimony at trial, the victim—identified as Madeline Jaffe—died as a result of twenty-three stab wounds. Jaffe's aunt testified that she drove Jaffe to a grocery store across the street from where her body was found at approximately 7:30 p.m. on the night of August 5, 2005, where Jaffe intended to wait for a friend to get off from work at the store. Although the friend testified that he spoke briefly with Jaffe during his work shift, he could not locate her when he left the grocery store at approximately 10:40 p.m.

The Little Rock Police Department considered Williamson a person of interest in the murder after witnesses told investigators that they last saw Jaffe alive with Williamson on the night of August 5, 2005. Prior to his arrest, Williamson consented to a police interview and provided a DNA sample. Williamson admitted to police that he met Jaffe on August 5th, but stated that he only bought her a soda at a gas station, and that he last saw her at a pay phone at the gas station at approximately 8:10 p.m. He stated that he left the area at approximately 9:30 p.m. to spend the rest of the night and subsequent weekend with his girlfriend, Patty Bradford.

The testimony of two witnesses, however, contradicted Williamson's statement to police. One witness, the owner of the gas station next door to the business where Jaffe's body was found and at which Williamson claimed to have purchased a soda for Jaffe, testified that she refused to sell Jaffe a cigar because she failed to present identification, but offered to call her a taxi cab, warning Jaffe that the area was dangerous. The witness testified that Williamson overheard the conversation, bought Jaffe the cigar himself, and that the two left the gas station together. Another witness testified that he noticed Jaffe alone with Williamson three times on the night of August 5th near the location where Jaffe's body was found, the last time at approximately 10:00 p.m.

Williamson's girlfriend also contradicted his statements to police. According to Bradford's statement to police during an interview at her apartment and her testimony at trial, Williamson called her at approximately 11:30 p.m. to ask if he could "come over" to her apartment. Bradford testified that Williamson arrived several minutes later holding his shirt ₃in his hands, sweating, and his face bloody, and she allowed Williamson to wash his face, but that he left afterwards and did not stay at her apartment during the weekend. At their request, Bradford gave items of Williamson's clothing to the police during the interview. Testing of Williamson's shirt revealed fibers similar to fibers from a shirt Jaffe wore the night of her murder and found wrapped around her legs in the garbage dumpster. A forensic analyst testified that a sample of blood taken from Jaffe's shirt provided a mixed DNA sample that could neither identify Williamson as the minor contributor nor exclude him, but did exclude 95% of the African–American population—Williamson's race—as possible contributors. Additionally, the analyst testified that DNA from a cigarette butt recovered from a vehicle on which hairs consistent with Jaffe's were found provided a positive match to Williamson's DNA.

■ Appealing his conviction for capital murder by a Pulaski County jury, Williamson argues that the trial court erred by denying his motion for a directed verdict; specifically, he contends that the State failed to introduce substantial evidence of his identity as the person who murdered Jaffe. This court reviews a motion for a directed verdict as a challenge to the sufficiency of the evidence, and will affirm the circuit court's denial of a motion for directed verdict if there is substantial evidence, either direct or circumstantial, to support the jury's verdict. See Flowers v. State, 373 Ark. 127, 282 S.W.3d 767 (2008). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. Id. In reviewing the sufficiency of the evidence, we view the evidence and all ₄reasonable inferences deducible therefrom in the light most favorable to the State, without weighing it against conflicting evidence that may be favorable to the appellant, and affirm the verdict if it is supported by substantial evidence. Id.

■ This court "must decide as a threshold issue" whether Williamson's motion for a directed verdict is preserved for appellate review. Bienemy v. State, 374 Ark. 232, 236, 287 S.W.3d 551, 556 (2008). In order to preserve a sufficiency-of-the-evidence challenge on appeal, a timely, clear and specific motion for directed verdict must be made to the trial court. Ark. R.Crim. P. 33.1(c); Foster v. State, 2009 Ark. 454, 2009 WL 3162291. Rule 33.1 sets out the procedure for making a directed-verdict motion and states in pertinent part:

(a) In a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. A motion for directed verdict shall state the specific grounds therefor.

. . . .

(c) The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient

does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense. A renewal at the close of all of the evidence of a previous motion for directed verdict or for dismissal preserves the issue of insufficient evidence for appeal. If for any reason a motion or a renewed motion at the close of all of the evidence for directed verdict or for dismissal is not ruled upon, it is deemed denied for purposes of obtaining appellate review on the question of the sufficiency of the evidence.

This court has explained that the reason for the specificity requirement for a directed-verdict motion is that

> when specific grounds are stated and the absent proof is pinpointed, the circuit court can either grant the motion, or, if justice requires, allow the State to reopen its case and supply the missing proof. A further reason that the motion must be specific is that this court may not decide an issue for the first time on appeal.

*Pinell v. State,* 364 Ark. 353, 357, 219 S.W.3d 168, 171 (2005) (citations omitted).

At the close of the State's case during trial, Williamson petitioned the court for a directed verdict on the charge of capital murder as well as lesser-included offenses of first-degree murder, second-degree murder, and manslaughter as follows:

> DEFENSE COUNSEL: Yes, Your Honor. We move for [a] directed verdict on the charge of capital murder. The State failed to prove that Ramon Williamson caused the death of Madeline Jaffe with premeditation and deliberation.

STATE: No response, Your Honor.

COURT: No response. Anything further on the motion, sir?

DEFENSE COUNSEL: No, sir.

COURT: · Considering the evidence presented, your motion will be denied, sir.

DEFENSE COUNSEL: Your Honor, we'd also move for a directed verdict on the lesser offense [of] murder in the first degree. The State has failed to prove that Ramon Williamson purposely caused the death of Madeline Jaffe.

COURT: Response?

STATE: No response, Your Honor.

COURT: Counsel, again, having considered the evidence presented in the light, according to the rules of the matter, that motion will also be denied.

DEFENSE COUNSEL: And we also move for a directed verdict on the lesser charge of murder in the second degree. The State has failed to prove that Ramon Williamson knowingly caused the death of Madeline Jaffe.

COURT: Any response?

STATE: No, Your Honor.

COURT: All right. That's also denied, sir.

DEFENSE COUNSEL: Your Honor, we also move for a directed verdict on manslaughter. The State has failed to prove that Ramon Williamson recklessly caused the death of Madeline Jaffe.

STATE: Again, no response.

COURT: Also denied, counsel.[1]

---

1. Williamson did not renew his motion for a directed verdict after resting his case. However, as applicable here, renewal of a directed-verdict motion is not required to preserve a sufficiency challenge on appeal when the defense rests without presenting any evidence. *Robinson v. State,* 317 Ark. 17, 875 S.W.2d 837 (1994).

On appeal, Williamson solely argues that the State failed to introduce substantial evidence of "Williamson's identity as the person who murdered Madeline Jaffe." An appellant is precluded from making an argument on appeal that was not brought to the attention of the trial court. *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006); *cf. Roseby v. State*, 329 Ark. 554, 558, 953 S.W.2d 32, 34–35 (1997) (Appellant failed to preserve an issue for review where he argued on appeal that there was insufficient evidence he killed the victim "with premeditated and deliberate purpose," but had petitioned the trial court for a directed verdict because "the State had failed to present direct evidence linking [the appellant] to the crime."), *overruled in part on other grounds by MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998). An issue raised for the first time on appeal will not be considered because the trial court never had an opportunity to rule on it. *Id.* Williamson did not argue in his directed-verdict motion that the State failed to prove his identity as Jaffe's murderer; accordingly, this argument cannot be raised on appeal.

Further, even if Williamson's directed-verdict motion could be construed as a challenge to the State's proof of identity, he failed to state with any specificity how the State's evidence was flawed. Rule 33.1(a) provides that a directed-verdict motion "shall state the specific grounds therefor." This court interprets Rule 33.1 strictly, *Grady v. State*, 350 Ark. 160, 85 S.W.3d 531 (2002), and failure to comply with subsection (a) "will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment." Ark. R.Crim. P. 33.1(c); *see also Smith v. State*, 367 Ark. 274, 239 S.W.3d 494 (2006). Because Williamson's directed-verdict motion was nonspecific, it is not preserved for review. *See, e.g., Elkins v. State*, 374 Ark. 399, 402, 288 S.W.3d 570, 573 (2008) (holding that the appellant failed to preserve a directed-verdict motion for review where the motion "failed to state with specificity what the flaws were or why certain witnesses lacked credibility"); *see also Webb v. State*, 327 Ark. 51, 59, 938 S.W.2d 806, 811 (1997) (holding that a directed verdict motion was not preserved for review where the appellant "did not specify the proof alleged to be insufficient" and "did nothing to inform the trial court of the allegedly missing proof")

This case involves a sentence of life imprisonment without parole; therefore, it is subject to review under Arkansas Supreme Court Rule 4–3(i) (2009). Rule 4–3(i) does not, however, require this court to review Williamson's claim that the trial court erred by denying his directed-verdict motion because

> failure to make the motions for directed verdict with specificity regarding the sufficiency issue on appeal equates to the motion never having been made. We hold that this is so even in situations where the motion is specific at the close of all the evidence but not at the close of the State's case. The motion for directed verdict on the issue at hand is simply not preserved. Rule 4–3[ (i) ], as a result, does not mandate review … when the directed-verdict motion has not been properly made.

*Elkins*, 374 Ark. at 402–03, 288 S.W.3d at 573–74 (citations omitted).

As required under Ark. Sup.Ct. R. 4–3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found. *See Banks v. State*, 2009 Ark. 483, 347 S.W.3d 31.

Affirmed.