ROBIN F. WYNNE, Associate Justice
Michael James Friday appeals from his convictions for two counts of rape for which he was sentenced to life plus forty years' imprisonment in the Arkansas Department of Correction. Appellant raises the following points on appeal: (1) the evidence was insufficient to support either conviction; (2) the trial court abused its discretion in denying his motion in limine seeking to preclude reference to the prosecuting witnesses as "victims"; (3) the trial court erroneously closed the courtroom during voir dire in violation of his fundamental right to a public trial; and (4) the trial court abused its discretion in restricting his cross-examination of witness David Hall about the circumstances of his departure from a previous law-enforcement job. Because appellant received a sentence of life imprisonment, this court's jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(2) (2017). We affirm.
The allegations arose in July 2016 while the victims, A.H. and A.T., were attending a church camp. An investigation ensued, and A.H. and A.T. were interviewed by the Crimes Against Children Division of the Arkansas State Police. The State charged appellant by felony information with two counts of rape under Arkansas Code Annotated section 5-14-103(a)(3)(A), engaging in sexual intercourse or deviate sexual activity with another person who is less than fourteen (14) years of age, which were alleged to have occurred on or about July 15, 2016, and one count of distributing, possessing, or viewing matter depicting sexually explicit conduct involving a child, first offense, under *321 Arkansas Code Annotated section 5-27-602, which was alleged to have occurred on or about July 21, 2016.[1]
Appellant's jury trial was held on June 26 and 27, 2017. A.H., who was thirteen years old at the time of trial, testified that appellant, her stepfather, began sexually abusing her when she was five. The first time, he digitally penetrated her. He continued and also "put his mouth on [her] girl part"; she could not recall exactly how many times appellant had touched her but stated that it was "a lot." It usually occurred in her bedroom or in her mom and appellant's bedroom, typically at night when everyone else in the house was asleep. When A.H. was eleven, appellant began penetrating her vagina and anus with his penis and also making her "stick [her] mouth on his boy part." A.H. also testified regarding text messages appellant sent her and a video of her, made at appellant's direction, walking across the hall wearing only a shirt. A.H. further testified that appellant told her that if she ever told anyone about what was going on, he would tell everybody that it was her fault.
A.H.'s mother, Glenda Friday, testified that A.H. was four years old when she and appellant met, and she testified to the family's living arrangements and the couple's work schedules. Glenda worked as a nurse and appellant did shift work of varying schedules fifteen days out of the month. The house that they lived in had the children's bedrooms on one side and her and appellant's bedroom on the other. She testified that when she told appellant there were allegations that someone had molested A.H. and suggested that it was him, he threatened to kill himself. Glenda further testified that their sex life had gradually deteriorated and that they had never had sex on the sheets that were collected from A.H.'s room. She also stated that about six months before the allegations came to light, she woke up at 5:00 a.m. and could not find appellant, although his truck was there. After she looked for him and then went to the bathroom, he appeared in the living room and told her that he had fallen asleep in his truck.
A.T., who was fifteen at the time of trial, testified that A.H. is her second cousin. She stated that when she was nine years old and in the fourth grade, she attended school in Ashdown. She testified that she spent the time between the end of school and her parents' getting off work at Glenda and appellant's house. While Glenda was at work and appellant was the adult in charge of A.T., A.H., and A.H.'s older sister, the girls usually ate something and then would "all lay in his bed and play on [their] phones." Appellant would "finger" her under the covers and place her hand on his penis. On one occasion, he put his mouth on her vagina and put his tongue inside her vagina.
The evidence presented at trial also included testimony that bed sheets recovered from A.H.'s bedroom contained sperm cells that within all scientific certainty came from appellant. A search of appellant's and A.H.'s cell phones revealed a video on appellant's phone that appeared to show A.H. walking across the hallway wearing only a shirt. Deleted messages from appellant's phone to A.H.'s phone included statements such as "I want to kiss your tits and a BJ." In addition, a sexual-assault nurse examiner testified that she had performed an exam on A.H. on July 19, 2016. The nurse's findings were consistent with the history that A.H. had given.
*322 As noted above, the jury found appellant guilty of both counts of rape, and he was sentenced to life plus forty years' imprisonment in the Arkansas Department of Correction. This appeal followed.
I. Sufficiency of the Evidence
For his first point on appeal, appellant argues that "[t]here was not substantial evidence that either of the alleged victims was under 14 years of age at the time of the alleged offenses." He takes issue with the fact that there was no evidence at trial regarding the date of birth of either victim and also argues that A.T., who was fifteen at the time of trial, was fourteen on the date of the alleged offense as charged in the information, which was less than a year before trial.
This court reviews a motion for a directed verdict as a challenge to the sufficiency of the evidence, and we will affirm the circuit court's denial of a motion for directed verdict if there is substantial evidence, either direct or circumstantial, to support the jury's verdict. Williamson v. State , 2009 Ark. 568, at 3, 350 S.W.3d 787, 789. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. Id. In reviewing the sufficiency of the evidence, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the State, without weighing it against conflicting evidence that may be favorable to the appellant and affirm the verdict if it is supported by substantial evidence. Id. In order to preserve a sufficiency-of-the-evidence challenge on appeal, a timely, clear, and specific motion for directed verdict must be made to the trial court pursuant to Ark. R. Crim. P. 33.1(c). Here, appellant argued in relevant part as follows:
The defendant would move for a directed verdict on each count of rape. The state has failed to meet their burden. Specifically, they have failed to establish that the defendant, Michael Friday, engaged in sexual intercourse or deviate sexual activity with a person under the 14 - under 14 years of age. There was inadequate testimony as to the age of the victims and the age of the victims at the time of the alleged sexual intercourse or deviate sexual activity.
....
Your Honor, it's the defendant's position there was never established dates of birth. They --. And defendant believes that's necessary to convict a person of rape under the age of 14.
The circuit court denied the motion, and the defense rested without presenting any evidence.
It is well established that the uncorroborated testimony of a rape victim alone is sufficient to sustain a conviction. See, e.g. , Ward v. State , 370 Ark. 398, 400, 260 S.W.3d 292, 294-95 (2007). Here, A.H. testified that she was five years old when appellant began raping her, and A.T. testified that appellant raped her when she was nine years old. There is no requirement under the statute, and appellant cites no authority for the proposition, that the birthdates of the victims must be established at trial. As for his argument that A.T. was fourteen on the date contained in the felony information, that argument was not made below and is therefore not preserved for appellate review. Ark. R. Crim. P. 33.1 (2017); Cockrell v. State , 2010 Ark. 258, at 9, 370 S.W.3d 197, 202 ("[A] party cannot change the grounds for an objection on appeal but is bound by the scope and nature of the arguments presented at trial."). We affirm on this point.
*323 II. References to "Victims"
Next, appellant argues that the trial court abused its discretion in denying his motion in limine seeking to preclude reference to the prosecuting witnesses as "victims." Prior to trial, appellant filed a motion to preclude the State or its witnesses from referring to A.H. and A.T. as "victims." At a pretrial hearing, the trial court denied the motion and ruled as follows:
THE COURT : Are any of your cases newer than 2008?
[ DEFENSE COUNSEL ]: I do not believe they are, Your Honor.
THE COURT : Because I remember when I was the prosecutor this issue came up numerous times. And the case law that I remember seemed to indicate that it'd be preferable not to, but it's not reversible error and the Supreme Court did not direct the Court or the prosecutor to refer to the individuals or alleged victims as victims. So I'm going to deny your motion at this time.
Appellant argues on appeal that this ruling constituted an abuse of discretion and alleges that "the trial court and the State repeatedly referred to the alleged victims as 'victims' during voir dire." Appellant also states that the "State's witnesses also referred to both alleged victims as 'victims' several times during the State's case-in-chief." He argues that the use of that term eroded his fundamental right to be presumed innocent and improperly shifted the State's burden of proof to him, requiring him to prove that a crime had not been committed.
The cases cited by appellant for his argument on this point are distinguishable. In Sharp v. State , 51 Ark. 147, 10 S.W. 228 (1889), the appellant was granted a new trial based on statements by the trial judge that could have intimated an opinion in the case and improperly influenced the jury. Similarly, in Bateman v. State , 2 Ark. App. 339, 621 S.W.2d 232 (1981), the court of appeals addressed the trial judge's use of the word "victim" during voir dire. The court affirmed the denial of Bateman's motion for mistrial:
In this case, the trial court should not have referred to the prosecuting witness as the "victim", but from a review of the record it is clear that the court was simply attempting to identify her for purposes of questioning the jury panel as to whether or not they were acquainted with her. Certainly, the court could have referred to her as the alleged victim and that would not have been error. Under all the circumstances, we do not view that comment by the trial court as prejudicial even though the term should not have been used.
2 Ark. App. at 340, 621 S.W.2d at 233-34. Here, the only instance in which appellant identifies the trial court's use of the term "victim" was during a bench conference with a single potential juror who was ultimately released. Therefore, the trial court did not improperly influence the jury by using the term "victim" to refer to the complaining witnesses, and the only authority appellant cites is distinguishable. Regarding appellant's objection to the use of the word "victim" by the prosecution and law-enforcement witnesses, it was readily apparent to the jury that in the prosecution's theory of the case, A.T. and A.H. were, in fact, victims. And the law-enforcement officers' references to A.T. and A.H. as "victims" were in the officers' testimony recounting their role in the investigation. There is no prejudicial error under these circumstances, and we affirm on this point.
III. Public Trial
For his third point on appeal, appellant argues that the trial court erroneously *324 closed the courtroom during voir dire in violation of his fundamental right to a public trial. He cites to the portion of the record in which, during voir dire, the "[v]ictim's father attempts to exit the courtroom," referring to A.T.'s father, and the circuit court then stated, "The courtroom's locked. Hold on, hold on, hold on. I thought the courtroom was locked." During a subsequent bench conference, the State noted, "That's [A.T.'s] dad and he ain't doing very well. He needs to get out of here." The trial court responded, "Go ahead," and the record then reflects that the "[v]ictim's father exits courtroom." On appeal, appellant contends that his convictions must be reversed because his fundamental right to a public trial was violated.
In Schnarr v. State , 2017 Ark. 10, 2017 WL 374727, this court addressed the constitutional right to a public trial guaranteed by the Sixth Amendment to the United States Constitution and article 2, section 10 of the Arkansas Constitution. In Schnarr , this court held that the issue was preserved for appeal because, while the issue was not known to defense counsel when Schnarr's family members were excluded from the courtroom during voir dire, defense counsel raised the denial of Schnarr's right to a public trial at the first opportunity after making the discovery. Schnarr moved to quash the jury and to declare a mistrial; the trial court denied his motion, and he later renewed his motion and proffered the testimony of the excluded family members, which the court denied. Here, in contrast, no objection to the courtroom's alleged closure was ever raised by the defense to the trial court. Under these circumstances, we adhere to the well-established precedent that requires a contemporaneous objection to preserve an issue for appeal, even a constitutional issue. E.g. , Anderson v. State , 353 Ark. 384, 395, 108 S.W.3d 592, 599 (2003). Because appellant failed to object below, we affirm on this point without addressing appellant's argument.
IV. Cross-Examination of David Hall
Finally, appellant argues that the trial court abused its discretion in restricting his cross-examination of the lead investigator David Hall about the circumstances of his departure from a previous law-enforcement job. During cross-examination, defense counsel started to ask Hall why he had left a job at the Arkansas Game and Fish Commission. The prosecution objected, and a bench conference ensued:
[ DEFENSE COUNSEL ]: Judge, the anticipated testimony is that he was - that he lied on a document that he signed regarding a vehicle incident. And it goes to his credibility as a witness and his ability to tell the truth.
THE COURT : Do you have a good faith basis for asking that?
[DEFENSE COUNSEL ]: Yes, I mean, --
[ PROSECUTION ]: I'd like to see it, because I've looked at the same documents and I don't see it. I'd like to see what his good faith, you know --. I'd like the court to take a look at it outside the presence of the jury. Sorry.
THE COURT : Do you have a good faith --? Just tell me. Do you have a good faith basis -
[ DEFENSE COUNSEL ]: Your Honor, I've got the document that he signed. And I think it is the same document that you probably --. That what we're talking about.
[ PROSECUTION ]: It's an accident report that said, I hit a tree.
THE COURT : Well, just ask him then, but you're stuck with his answer.
[ DEFENSE COUNSEL ]: Okay.
THE COURT : Go ahead.
*325 Hall then testified that he left the commission because he had a disagreement with a supervisor; he resigned his position and left in good standing. When defense counsel attempted to inquire further into the circumstances surrounding the disagreement, the prosecution objected:
[ PROSECUTION ]: This is not relevant and it violates 404, 403, 401, and 103.
THE COURT : I gave --. I made a ruling and gave you direction. You're kind of veering off from what I allowed you to do.
[ DEFENSE COUNSEL ]: Yes, Your Honor. I'll move on.
There was no further objection from the defense, and there was no proffer of testimony or of the document that allegedly provided the basis for the untruthful statement.
On appeal, appellant argues that he was entitled to have the jury consider the circumstances of key State witness David Hall's departure from the Arkansas Game and Fish Commission in determining his credibility under Arkansas Rule of Evidence 608(b).[2] As this court recently stated, a proffer "permit[s] the trial judge to make an informed evidentiary ruling" and "create[s] a clear record that an appellate court can review to determine whether there was reversible error in excluding the [evidence]." Sharp v. State , 2018 Ark. 274, at 5, 555 S.W.3d 878, 881 (quoting Perkins v. Silver Mountain Sports Club & Spa, LLC , 557 F.3d 1141, 1147 (10th Cir. 2009) ). Generally, a party must make a proffer to preserve for appellate review an issue concerning the erroneous exclusion of evidence at trial. Id. A proffer is unnecessary, however, when the substance of the evidence is apparent from the context within which it was offered. Id.
Here, appellant attempts to overcome the lack of a proffer by arguing that "the substance of Hall's specific instance of misconduct is apparent from the context." We disagree. The record contains only defense counsel's assertion that Hall lied in a document he signed about a vehicle accident, and the prosecution disputed that the document provided a good faith-basis for asking Hall if he had been untruthful in the report. Because appellant failed to proffer either the excluded testimony or the document upon which defense counsel relied, and because the substance of that testimony is not clearly apparent from the record on appeal, his Rule 608(b) argument is unpreserved. Therefore, we affirm on this point.
V. Conclusion
In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests decided adversely to appellant, and no prejudicial error has been found.
Affirmed.
HART, J., dissents.
Make no mistake, child rape is a heinous crime that cannot be tolerated. Moreover, *326 there was compelling evidence that Friday repeatedly engaged in this despicable conduct for nearly a decade. However, that does not justify convicting Friday of a crime for which he was not charged and eviscerating the cornerstone of our criminal law-the presumption of innocence.
I cannot ignore that Friday was tried on two counts of rape, i.e., engaging in sexual intercourse or deviate sexual activity with another person who was less than fourteen years of age, "on or about July 15, 2016. " (Emphasis added.) July 15, 2016 was not the date or, more accurately, one of the many dates on which Friday engaged in sexual activity with children, but merely the date that A.T. and A.H. reported it to police. If anything, that date was the one time that we could be certain Friday did not have sexual contact with either A.T. or A.H.
I am mindful that Arkansas law tolerates minor deviations in the indictment with regard to the time of the offense. The standard is whether the time specified is "material to the offense." Wilson v. State , 320 Ark. 707, 898 S.W.2d 469 (1995). With regard to A.H., I concede that it was not material to this case. As noted previously, Friday was charged with engaging in sexual intercourse or deviate sexual activity with A.H. when she was under the age of fourteen, and her testimony established that she was under the age of fourteen even though the trail was nearly a year after Friday last had engaged in sexual conduct with her. Moreover, Friday's sexual conduct with A.H. was established to have taken place shortly before the date alleged in the information. The case involving A.T., however, is different.
A.T. testified that she was fifteen at the time of trial, which was held on June 26, 2017. Logically, she could not have been under the age of fourteen "on or about July 15, 2016. This fact is material to the case because the age of the alleged victim-"under the age of fourteen"-is an element of the charged offense of rape. Further, all of A.T.'s testimony concerned sexual contact that she had with Friday when she was nine or ten years old. Again, this conduct was not "on or about July 15, 2016." Reprehensible, yes, but the remoteness in time of the acts she complained of relative to the time specified in the information means that Friday was convicted of an uncharged crime. This material variance between the information and what the jury was instructed on amounted to a violation of Friday's right to due process. See Cokeley v. Lockhart 951 F.2d 916 (1991). Accordingly, the conviction for rape of A.T. should be reversed and dismissed.
In denying Friday's motion in limine to exclude the State's witnesses from referring to A.H. and A.T. as "victims," the circuit court denied Friday his right to the presumption of innocence. Friday's reliance on Sharp v. State , 51 Ark. 147, 10 S.W. 228 (1889), is well placed. In reversing a murder conviction, the Sharp court stated that the "word victim in the connection in which it appears, is an unguarded expression, calculated, though doubtless unintentionally, to create prejudice against the accused. It seems to assume that the deceased was wrongfully killed, when the very issue was as to the character of the killing.... And it was nearly equivalent, in effect, to an expression characterizing the defendant as a criminal." 51 Ark. at 156-157, 10 S.W. at 232. Although the case before us involves rape and not murder, that is a difference without a distinction. Allowing the State's witnesses were allowed to refer to A.T. and A.H. as "victims," prejudiced the jury to conclude that they had been sexually assaulted. This lightened the State's burden immeasurably.
*327 Friday's citation of Bateman v. State , 2 Ark. App. 339, 340, 621 S.W.2d 232, 233-34 (1981), is also instructive. Our court of appeals, albeit in dicta, stated that "the trial court should not have referred to the prosecuting witness as the 'victim' " during voir dire, and that "alleged victim" would have been the appropriate term." The Bateman court only affirmed the case only because the circuit court was not given an opportunity to rule on this issue until after trial was already underway and the statement at issue had already been made to the jury. 2 Ark. App. at 340, 621 S.W.2d at 234. While not binding authority, Bateman nonetheless provides a clear statement of the law. Importantly, both Sharp and Bateman were cited to the circuit court.
As with any evidentiary ruling, reversal required an abuse of the circuit court's discretion, which requires that the circuit court "act improvidently, thoughtlessly, or without due consideration." Fletcher v. State , 2018 Ark. 261, at 5, 555 S.W.3d 858, 863. In my view, the circuit court's ruling satisfies this very high standard. After a hearing, the trial court denied Friday's motion, noting:
Because I remember when I was the prosecutor this issue came up numerous times. And the case law that I remember seemed to indicate that it'd be preferable not to, but it's not reversible error and the Supreme Court did not direct the Court or the prosecutor to refer to the individuals or alleged victims as victims. So I'm going to deny your motion at this time.
The circuit court's "due consideration" consisted of nothing more than a cynical assessment of whether it would be reversed-not a single thought went to the effect on Friday's constitutional right to a fair trial. It is difficult to say whether the circuit court's calculations or the majority's decision is worse, but suffice it to say that it was not the Arkansas judiciary's finest hour.
I respectfully dissent.

The third count was dismissed.

Rule 608(b) provides the following:
(b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.