Cite as 2019 Ark. 259

# SUPREME COURT OF ARKANSAS

No.: CR-18-706

| | |
|---|---|
| | Opinion Delivered: October 3, 2019 |
| LAJASON JAQUIZE COAKLEY<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT<br>[NO. 46CR-16-661 ]<br><br>HONORABLE BRENT HALTOM JUDGE<br><br><u>AFFIRMED</u>. |

**ROBIN F. WYNNE, Associate Justice**

LaJason Coakley appeals from his conviction on one count of murder in the first degree. He raises the following arguments on appeal: (1) the trial court erred in allowing testimony over his objection involving prior incidents unrelated to the night of the charged murder; (2) the trial court erred by denying his motion for directed verdict based on insufficient evidence of purpose to kill; and (3) the trial court erred in refusing his motion for a jury instruction on justification for manslaughter. We affirm.

Appellant was charged with one count of murder in the first degree in connection with the shooting death of Montel Waller. The shooting occurred at the Paradise Club in Texarkana, Arkansas, on August 20, 2016. Video of the incident from inside the club showed that a disturbance broke out between appellant and Waller's brother, JaVon Jones. Jones struck appellant. Shortly afterward, Waller also approached and struck appellant, at

which point appellant drew a gun, shot Waller one time in the neck, then left the club. Waller was taken to a hospital, where he died approximately three weeks later. Appellant's defense at trial was justification, based on the video showing several people, including Waller and Jones, advancing toward him when he shot Waller.

Over appellant's objection, the State was permitted to elicit testimony regarding three prior incidents involving appellant. The first incident occurred in June 2013. Larry Waller, who is Montel Waller's cousin, testified that he saw Jones leaving a convenience store when appellant followed Jones out of the store, pulled a gun, and pointed it at Jones. Larry Waller and Jones left the store and found appellant's car parked at Larry's home, which was behind the convenience store. Larry asked appellant to leave. Appellant backed out of the driveway and stopped. Appellant then got out of the car and fired several shots at Larry and Jones. Jones and a group of people went to another residence, and as they were going inside, shots hit the house and a car parked outside. Jones and Larry testified that appellant was one of the shooters.

The second event occurred two to three weeks prior to the shooting. Jones testified that he was entering a gas station when he saw appellant begin circling the station in his vehicle. Jones left the station and got into a car. As he was sitting in the car, an unidentified individual ran up to the car and punched him in the face. Jones testified that appellant's vehicle sped out of the parking lot a few seconds later.

The third event occurred approximately two weeks prior to the shooting. Loneca Ross, a security guard at the Paradise Club, testified that on the night in question, Waller

2

ran out the front door of the club, telling Ross that appellant had been "picking on him." Ross stated that as Waller went around the corner of the building toward his car, she saw appellant walking through the parking lot holding a gun that was pointed in the air. According to Ross, appellant entered his vehicle and followed Waller out of the parking lot.

Appellant objected to the testimony regarding each of the three incidents, contending that the testimony was character evidence that was inadmissible under Arkansas Rule of Evidence 404(a). The State countered that the testimony was admissible under Rule 404(b) as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The trial court overruled appellant's objection and admitted the evidence regarding the prior incidents. Appellant moved for a directed verdict at the close of the State's case and at the close of all the evidence, contending that the evidence was insufficient to prove that he acted with the requisite intent. The motions were denied. The jury found appellant guilty of murder in the first degree, and he was sentenced as a habitual offender to a term of life imprisonment. This appeal followed.

Appellant contends that the trial court erred in denying his motions for directed verdict because there was insufficient evidence of purpose to kill. Although this is the second argument raised in appellant's brief, we must consider it first due to double-jeopardy concerns. *See Tucker v. State*, 2011 Ark. 144, 381 S.W.3d 1. This court reviews a motion for a directed verdict as a challenge to the sufficiency of the evidence, and we will affirm the circuit court's denial of a motion for directed verdict if there is substantial

evidence, either direct or circumstantial, to support the jury's verdict. *Williamson v. State*, 2009 Ark. 568, at 3, 350 S.W.3d 787, 789. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* In reviewing the sufficiency of the evidence, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the State, without weighing it against conflicting evidence that may be favorable to the appellant and affirm the verdict if it is supported by substantial evidence. *Id.*

Appellant was convicted of murder in the first degree. A person commits murder in the first degree if, with the purpose of causing the death of another person, the person causes the death of another person. Ark. Code Ann. § 5-10-102(a)(2) (Supp. 2017). There was testimony at trial by employees of the Paradise Club that appellant arrived at the club before Waller and Jones and was searched upon entering the club. There was testimony that, after Jones and Waller arrived at the club, appellant went to and from the parking lot several times and that he was not searched the last time he entered the club. The State produced testimony that, during the altercation, appellant was telling Waller to "run up," which was described as encouragement to fight. There was further testimony that appellant drew a gun and immediately shot Waller in the neck without warning. The jury was also shown the video footage of the altercation. This evidence, when taken as a whole and examined in the light most favorable to the State, was sufficient for the jury to conclude without resorting to speculation that appellant acted with the purpose of causing the death of Waller. We affirm on this point.

4

Appellant next argues that the trial court erred by allowing the testimony regarding the prior incidents. Admission of the evidence is governed by Arkansas Rule of Evidence 404 (2018), which states as follows:

(a) *Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(1) *Character of Victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(2) *Character of Witness.* Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In analyzing the admission of evidence under Rule 404(b), this court has stated that such evidence is not admissible simply to show a prior bad act. *Osburn v. State*, 2009 Ark. 390, 326 S.W.3d 771. To be admissible, the evidence must be independently relevant, which means it must have a tendency to make the existence of a fact of consequence to the determination of the case more or less probable. *See id.* It is well settled that the admission or rejection of evidence is left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *See id.*

The trial court ruled that the evidence of the prior acts was admissible under Rule 404(b) as proof of motive and intent. The identity of appellant as the person who shot

5

Waller was not at issue during the trial. His defense at trial was one of justification. Thus, despite appellant's contention in his brief that his intent was not an issue, his intent was at the crux of the jury's determination of guilt, as the jury was required to determine whether appellant acted with the requisite intent for the charged offense or whether his act of shooting Waller was justified.

Appellant contends that this case is similar to *Rowdean v. State*, 280 Ark. 146, 655 S.W.2d 413 (1983), in which this court held that, in a prosecution for first-degree murder, evidence that the defendant had pulled a gun on a person in an incident unrelated to the charged offense and had carried a knife in the past was not admissible under Rule 404(b). However, this case is distinguishable from *Rowdean*. In *Rowdean*, the prior incident had no connection whatsoever to the charged conduct; thus, there was no reason to introduce evidence of the prior incidents other than to portray the defendant as a bad person. In the instant case, the connection between the prior acts and the charged conduct that was lacking in *Rowdean* is present. All three incidents involved appellant and either Waller or Waller's brother, Jones. Appellant, Waller, and Jones were all involved in the altercation at the nightclub that resulted in Waller's death. The evidence of prior violent acts by appellant toward Waller and Jones was independently relevant to and probative of appellant's intent as well as his motive in pointing a gun at Waller, who was not armed, and pulling the trigger. The trial court's decision to admit evidence of the prior acts was not an abuse of discretion, and we affirm on this point.

6

Appellant's final argument is that the trial court erred in refusing to give a jury instruction on justification for manslaughter. This court has held that if there is some evidentiary basis for a jury instruction, giving the instruction is appropriate. *Hickman v. State*, 372 Ark. 438, 277 S.W.3d 217 (2008). A party is entitled to an instruction if there is sufficient evidence to raise a question of fact or if there is any supporting evidence for the instruction. *Id.* However, we have also held that the defendant must demonstrate prejudice from the trial court's refusal to give the instruction. *See id.*

The jury was instructed on murder in the first degree, justification for murder in the first degree, and manslaughter. Appellant requested an instruction on justification for manslaughter, which was denied. Appellant was convicted of murder in the first degree. Before the jury may consider any lesser-included offense, it must first determine that the proof is insufficient to convict on the greater offense. *Hughes v. State*, 347 Ark. 696, 66 S.W.3d 645 (2002). Here, the jury determined that the proof was sufficient to convict appellant of murder in the first degree. Accordingly, it never considered the lesser-included offense of manslaughter. Because the jury never considered manslaughter, there can be no prejudice to appellant from the trial court's refusal to instruct the jury on justification for manslaughter. We affirm on this point as well.

The record has been reviewed for prejudicial error pursuant to Arkansas Supreme Court Rule 4-3(i) (2018) and none has been found.

Affirmed.

HART, J., dissents.

7

JOSEPHINE LINKER HART, **Justice, dissenting.** The purpose of a trial is to seek the truth. In this case, the testimony about the three prior instances involving LaJason Coakley (appellant), Montel Waller (the victim), and Javon Jones (the victim's brother) should not have been allowed into evidence. Allowing the State to use those prior instances as evidence against Coakley turned this situation (a barroom fistfight that escalated to the point of one man shooting another) into something that, by my view of the record, it simply was not (a preconceived vendetta to kill someone in a crowded social venue).

Analysis of this issue involves application of Rules 404 and 403 of the Arkansas Rules of Evidence. Rule 404 provides as follows:

(a) *Character Evidence Generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) *Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) *Character of Victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) *Character of Witness.* Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b) *Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

8

Ark. R. Evid. 404.  Evidence that otherwise fits within the exceptions contemplated under

Rule 404(b) still must satisfy the balancing test set out in Rule 403 to be admissible:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Ark. R. Evid. 403.

The most reliable evidence of what happened at the nightclub on the evening of the

shooting is the nightclub's security-camera footage.  At trial, the State introduced videos

from four different camera angles at the nightclub:

> <u>Video 1</u> – located outside, above the entrance/exit of the nightclub, facing outward toward the parking lot;
>
> <u>Video 2</u> – located just inside the nightclub, facing forward/downward with view of the entrance/exit;
>
> <u>Video 3</u> – located inside the patron area of the nightclub, facing out over a large room with view of dozens of patrons, a boxing ring to the left, several tables and seats in the middle, a dancing pole and stairs to the right; and
> <u>Video 4</u> – located to the right from where Video 3 was captured, looking out over the same area inside the nightclub, but with the upper right portion of its view obscured by stairs.

Each of the four videos covers a stretch of three minutes and thirty seconds (00:03:30), and

the shooting occurs at approximately the halfway point in each video.  However, the only

angle that captured very much, if any, of the incident itself was that of Video 3.

This situation developed quickly, and a second-by-second breakdown of the Video 3

footage is necessary:

9

- **(at least the preceding 15 seconds)-1:34** – Toward the back right of the room from where Camera 3 is situated, Coakley is dancing in a crowd of people, right up until about 1:32, when he appears to stop dancing and start talking to someone (according to Jones, this person was Waller).

- **1:34** – Jones comes up from the side and punches Coakley in the side of the face.

- **1:34-1:38** – Coakley stumbles away from the blow, regains his balance, and hustles back to where he can see Jones.

- **1:38-1:39** – Coakley squares up to Jones, pulls up his pants, bends his legs into an athletic position, and throws up his hands as if to signal to Jones that he is ready to fight. Jones testified that this is the moment when Coakley says, "[R]un up; run up." As Coakley squares up to Jones, other individuals standing near Jones begin mobilizing toward Coakley, i.e., setting their drinks down, indicating toward Coakley and stepping in his direction, etc.

- **1:40** – Coakley seems to size up his competition, realizes that he is outnumbered, drops his hands and begins stepping backward, away from Jones and the people with him.

- **1:41-1:45** – Both sides gesture toward each other for a moment, and then men from Jones's side proceed toward Coakley. By 1:45, two men, one being Waller, appear to have their hands on Coakley. There was mixed testimony as to whether the other man might have been looking to break up the conflict.

- **1:46** – A third man (Jones, according to his testimony) can be seen running from the area where Jones had been standing toward Coakley and the other two men, who are continuing forward and pushing Coakley backward from where he had been standing by several feet.

- **1:47** – Waller punches Coakley in the face.

- **1:48** – Coakley steps back from Waller's blow, and in a single quick motion, raises his right arm, holding a handgun, and shoots Waller. By the time the shot is fired, each of the other three men appears to be within five feet of Coakley.

10

From my view of the video, Jones initiated this physical altercation by blindsiding Coakley in the face, and Coakley sprang back, looking to get even. That is to say that Coakley, at the outset, sought to physically beat Jones with his own hands (as opposed to shooting Jones, or anyone else, with the handgun Coakley had in his pants). Every bit of Coakley's actions and body language reflect this desire, all the way up until the 1:40 mark when Coakley drops his hands and begins backing away from Jones and the men around him. Seven seconds later, Coakley has three men upon him, one of them being Waller, who also punches Coakley in the face. The very next second, Coakley shoots Waller, with the other two men still in his immediate vicinity. The entire incident, from start to finish, spanned less than fifteen seconds.

Video 3 plainly shows that this was a "bang-bang" situation characterized by instinctive, in-the-moment reactions. The simple question for the jury should have been whether Coakley's reactions were reasonable. Sure, it sounds as if Coakley and these two brothers had all sorts of preexisting reasons to plot against each other, but in this particular instance, the only act that seemed to have even a few seconds of thought behind it was the first punch thrown by Jones. However, introducing evidence of the prior incidents involving Coakley and the brothers allowed the prosecution to tell the jury a very different story, one where the defendant has always wanted to kill the victim, so he engineers the killing by tricking the victim into bringing fists to a gunfight.

The State tries to support this notion by suggesting that Coakley entered and exited the club several times that night until he was able to get the gun into the nightclub when

11

the security guards did not search him. How the gun got into the nightclub *is* an important question, but for multiple reasons, on the record presently before this court, I am unable to accept the State's contention.

First, the very notion that Coakley would know ahead of time whether the nightclub's security would neglect to search him, after any particular one of these alleged trips to and from his car, seems suspect. Second, and more importantly, if Coakley entered the nightclub, saw someone he wanted to kill, and by whatever circumstances was able to go out to his car and retrieve his gun for the killing, then *where is the security footage?* Again, the outside camera that recorded Video 1 was pointed directly at the nightclub's exit and parking lot. The State was able to identify Coakley in Video 1 among the masses of people rushing out of the nightclub into the parking lot in the immediate aftermath of the shooting. If earlier in the evening Coakley had retrieved the gun from his car as the State suggests he did, then those actions would have been recorded on the same camera that recorded Video 1. If I had been the prosecutor in this case, video footage of Coakley retrieving the gun from his car would have been Exhibit 1. No such video exists in the record, and its absence is suggestive, considering that other footage from this specific camera was introduced at trial.

Considering all these circumstances, allowing the prior acts into evidence caused undue prejudice to Coakley's case, and this prejudice substantially outweighed any probative value the prior acts otherwise supplied. There was never any question as to who shot Waller; Coakley has always argued that he was the shooter and that the shooting was

12

justified as self-defense. Allowing the prior acts in as evidence of Coakley's "motive" would tend to mislead the jury and confuse the issues. One could have a thousand preexisting motives for wanting to kill another person, but the probative value of those motives nonetheless dissipates when, as here, the actual killing occurs as a result of a "bang-bang" situation in which those involved are *reacting* to new, forcible circumstances before them (e.g., a bar fight that started with a blindside haymaker).[1] The prior acts should have been kept out, and the jury should simply have been asked to assess what happened on the night of the shooting.

I dissent.

*Phillip A. McGough, P.A.*, by: *Phillip A. McGough*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.

---

[1]The existence of video footage showing Coakley retrieving the handgun from his car would obviously affect this analysis.